**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| QUALITY LEASING CO., INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:18-cv-01969-TWP-TAB |
| | ) | |
| INTERNATIONAL METALS LLC, MANISH PUSHYE, VALLEY FORGE EQUIPMENT, INC., MAZYAR MOTRAGHI, and ROBERT STEIN, | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| INTERNATIONAL METALS LLC and MANISH PUSHYE, | ) ) | |
| | ) | |
| Counterclaimants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| QUALITY LEASING CO., INC., | ) | |
| | ) | |
| Counterclaim Defendant. | ) | |
| INTERNATIONAL METALS LLC, MANISH PUSHYE, and QUALITY LEASING CO., INC., | ) ) | |
| | ) | |
| Third Party Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| VALLEY FORGE EQUIPMENT, INC. and ROBERT STEIN, | ) ) | |
| | ) | |
| Third Party Defendants. | ) | |
| VALLEY FORGE EQUIPMENT, INC. and ROBERT STEIN, | ) ) | |
| | ) | |
| Third Party Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |

| | |
|---|---|
| MAZYAR MOTRAGHI, | ) |
| | ) |
|       Third Party Defendant. | ) |
| _____ | ) |
| MAZYAR MOTRAGHI, | ) |
| | ) |
|       Third Party Counterclaimant, | ) |
| | ) |
|       v. | ) |
| | ) |
| VALLEY FORGE EQUIPMENT, INC. and ROBERT STEIN, | ) |
| | ) |
|       Third Party Counterclaim Defendants. | ) |

**ENTRY ON MOTIONS FOR SUMMARY JUDGMENT**

This matter is before the Court on several Motions for Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56. Third Party Plaintiffs Valley Forge Equipment, Inc. ("Valley Forge") and Robert Stein ("Stein") filed a Motion against Third Party Defendant Mazyar Motraghi ("Motraghi") (Filing No. 184); Plaintiff Quality Leasing Co., Inc. ("Quality Leasing") filed a Motion against Defendant Valley Forge (Filing No. 192); and Plaintiff Quality Leasing filed Motion against Defendant Motraghi (Filing No. 193). This action concerns a claim for breach of contract and numerous other related claims arising out of agreements as they relate to the purchase and financing of an automobile logger baler. For the following reasons, Valley Forge's and Stein's Motion against Motraghi is **denied**, Quality Leasing's Motion against Valley Forge is **granted**, and Quality Leasing's Motion against Motraghi is **denied**.

**I.   BACKGROUND**

Quality Leasing, an Indiana corporation with its principal place of business in Indianapolis, Indiana is a finance company engaged in the business of financing commercial equipment (Filing No. 199-1 at 3–4). Defendant International Metals LLC ("International Metals") is a Delaware limited liability company with its principal place of business in Glendale, Arizona. Defendant

Manish Pushye ("Pushye") is a resident of Arizona and a member of International Metals with 90% ownership interest (Filing No. 132 at 2–6). Valley Forge is a Pennsylvania corporation with its principal place of business in Jenkintown, Pennsylvania. Stein is the president and sole shareholder of Valley Forge (Filing No. 155 at 2; Filing No. 184-1 at 1). Motraghi asserts in his pleadings that he "is a citizen and one of the people of Texas and is not a federal citizen." (Filing No. 69 at 50.) He also asserts elsewhere that he is a citizen of Canada (Filing No. 209 at 8).

As a lender in the equipment finance business, Quality Leasing agreed to finance a piece of equipment—a 2008 Colmar B6200-SW Automobile Logger Baler SN# 8292 mounted on Tri-Axle Trailer SN# 8292 baler (the "Equipment")—to be purchased by International Metals from Valley Forge. On November 6, 2017, International Metals entered into a Master Equipment Finance Agreement, Fleet No. 7627 (the "Agreement"), with Quality Leasing to finance the purchase of the Equipment. Pursuant to the terms of the Agreement, Quality Leasing and International Metals entered into a supplement to the Agreement wherein International Metals agreed to pay Quality Leasing sixty monthly payments in the amount of $4,968.57 plus fees for financing the purchase of the Equipment. Pushye signed the Agreement and supplement as a member of International Metals. As inducement to Quality Leasing to enter into the Agreement and supplement, Pushye executed a personal guaranty for the Agreement in which he absolutely and unconditionally guaranteed prompt payment of all payments and performance of all obligations of International Metals due under the Agreement and supplement (Filing No. 132 at 5–6; Filing No. 117-1 at 2–16).

Prior to entering into the financing Agreement with Quality Leasing, on October 31, 2017, International Metals agreed to purchase the Equipment from Valley Forge. The Equipment was to be delivered via truck to Phoenix, Arizona. Shipping and handling were included in the purchase price. $239,500.00 was tendered to Valley Forge for the purchase of the Equipment, and this

payment was received and accepted by Stein on behalf of Valley Forge (Filing No. 52 at 5–6). On approximately November 10, 2017, Quality Leasing wired the $239,500.00 to Valley Forge, and Valley Forge received these funds (Filing No. 155 at 8; Filing No. 196-5 at 12; Filing No. 194-5 at 2). Under the financing Agreement, International Metals was responsible for the repayment of the purchase price wired to Valley Forge by Quality Leasing (Filing No. 199-1 at 5).

On November 17, 2017, Valley Forge entered into a Confidential Equipment Seller's Agreement with Motraghi to purchase the Equipment. Pursuant to the contract, Motraghi agreed to sell the Equipment to Valley Forge. The contract explicitly noted that Valley Forge was purchasing the Equipment from Motraghi to resell to another buyer. The agreed purchase price of $140,000.00 was to be kept confidential, especially from any potential resale buyer. The contract required that the Equipment must be in good working condition at the time of sale. Any repairs or replacements required after shipment would be performed at the site of the resale buyer. The contract allowed for Valley Forge to withhold $20,000.00 of the purchase price to be used for any required repairs or replacements, and any remaining funds from that $20,000.00 would be sent to Motraghi (Filing No. 184-1 at 1–2, 7–9).

The contract between Valley Forge and Motraghi required that Motraghi deliver the Equipment to the Port of San Juan, Puerto Rico no later than November 29, 2017, and then it would be transported by ship to Jacksonville, Florida. Under the contract, payment to Motraghi would be made when he delivered the Equipment to the Port (Filing No. 184-1 at 8; Filing No. 184-4 at 5).

After entering into the contract with Valley Forge on November 17, 2017, Motraghi flew from Texas to Puerto Rico on November 18, 2017, to prepare the Equipment for delivery to the Port. Motraghi worked during the next six weeks to prepare the Equipment, expending labor and thousands of dollars (Filing No. 209-18 at 3–4). While he was working in Puerto Rico, he kept Valley Forge informed of the status of the repairs and other problems and challenges that he was

4

facing. Prior to the November 29, 2017 delivery deadline set in the contract, Motraghi informed Valley Forge that it would not be possible to meet that deadline. The November 29, 2017 deadline was then changed several times by Valley Forge, but Motraghi did not agree to any of the new deadlines, explaining that he did not know when the Equipment would be ready for delivery to the Port. On December 16, 2017, Valley Forge instructed Motraghi to not take the Equipment to the Port until he had sent videos to Valley Forge and then was given the go-ahead (Filing No. 223-4 at 12–13, 28–32, 36, 42, 46–49).

On December 22, 2017, Valley Forge sent a letter to Motraghi, asserting that he had breached their contract by not delivering the Equipment to the Port by November 29, 2017 and that the Equipment was not in good running condition. Valley Forge asserted that it would withhold an additional $30,000.00 for any necessary repairs, and testing of the Equipment would occur in mid-January 2018 at the resale buyer's site. Any of the withheld money not used for repairs would then be sent to Motraghi (Filing No. 184-1 at 10).

On January 3, 2018, after more than six weeks of labor and the expenditure of thousands of dollars, Motraghi delivered the Equipment to the Port in San Juan with the full knowledge of Valley Forge and the cooperation of Valley Forge's shipping agents. After Motraghi delivered the Equipment to the Port, Valley Forge wire transferred to Motraghi only $100,000.00 rather than the $120,000.00 set in the contract. This wire transfer was sent on January 3, 2018 (Filing No. 223-8 at 5–6; Filing No. 194-8 at 2). Motraghi had not agreed to Valley Forge sending only $100,000.00 (Filing No. 223-8 at 6). On the same day, January 3, 2018, after the Equipment was delivered to the Port, Valley Forge sent an email to Motraghi, explaining the ways in which the Equipment was not in good running condition and affirming that Valley Forge had unilaterally changed the payment amount by doubling the withheld money from $20,000.00 to $40,000.00. Valley Forge

5

informed Motraghi that it was "firm on this, and calling will not change it." (Filing No. 223-7 at 2–4.)

On January 4, 2018, Motraghi retrieved the Equipment from the Port with the full knowledge and cooperation of the port authorities. Thereafter, he did not return the Equipment to the Port because Valley Forge refused to pay the full $120,000.00 for the Equipment. Because Valley Forge refused to pay the contract price for the Equipment, refused to pay any damages to Motraghi, refused to take the controversy to a court of law as Motraghi requested, and refused to provide Motraghi with the contact information of Valley Forge's resale buyer or financing company, he seized the equipment. (Filing No. 223-8 at 6).

An attorney for Motraghi sent a letter to Valley Forge on January 5, 2018. The letter explained that the Equipment had been delivered on January 3, 2018, but because Valley Forge sent only $100,000.00, Valley Forge was in breach, so Motraghi was rescinding the contract, had taken possession of the Equipment, and was keeping the $100,000.00 as liquidated damages (Filing No. 194-10 at 2). In a second letter dated January 8, 2018, Motraghi informed Valley Forge that he cancelled the contract to sell the Equipment to Valley Forge. He directed Valley Forge to not send any funds to him, and he stated that he was keeping the funds already paid "as partial compensation for your breach." *Id.* at 3.

On January 12, 2018, Motraghi was contacted by a Pennsylvania police detective who told him that if he did not return the $100,000.00 then it would be considered a crime. For this reason, on January 13, 2018, Motraghi arranged a bank wire transfer of $85,000.00 to Valley Forge with the $15,000.00 balance to be sent later. However, the wire transfer was unsuccessful because Motraghi's bank had placed his bank accounts on hold pending an investigation for fraud based on representations made by Valley Forge. Motraghi returned to Texas on February 17, 2018, and after consulting with attorneys, Motraghi learned that the police detective's advice was incorrect. As a

result, Motraghi contacted his bank and cancelled the $85,000.00 wire transfer to Valley Forge. At that time, Motraghi's bank accounts were still on hold, and the bank's investigation was ongoing. On May 7, 2018, the bank concluded its investigation in Motraghi's favor and removed the holds from his bank accounts. Thereafter, Motraghi did not return the $100,000.00 to Valley Forge (Filing No. 223-8 at 7). In mid-August 2018, Motraghi's company sold the Equipment to a non-U.S. buyer who inspected the Equipment, purchased it, and then promptly removed it from Puerto Rico. *Id.* at 9. The Equipment was sold to the foreign buyer for $130,000.00 (Filing No. 194-13 at 5–6).

Although Valley Forge had received $239,500.00 from Quality Leasing to purchase the Equipment for International Metals, because Valley Forge never obtained the Equipment from Motraghi, Valley Forge was unable to deliver the Equipment to International Metals. Valley Forge also did not return the funds it received for purchasing the Equipment (Filing No. 52 at 6–7).

On April 10, 2018, Quality Leasing filed the instant Complaint against International Metals and Pushye (Filing No. 1). On November 30, 2018, International Metals and Pushye filed their Third Party Complaint against Valley Forge and Stein (Filing No. 31). On February 27, 2019, Valley Forge and Stein filed their Third Party Complaint against Motraghi (Filing No. 52). Motraghi had no knowledge of the identity or existence of Quality Leasing, International Metals, or Pushye until he was drawn into this litigation in February 2019 (Filing No. 209-18 at 6; Filing No. 194-2 at 4–5). Numerous claims and counterclaims were filed among the parties, and Quality Leasing filed an Amended Complaint on September 30, 2019, to name International Metals, Pushye, Valley Forge, Stein, and Motraghi as defendants (Filing No. 117).

Shortly before filing its Motions for Summary Judgment, Quality Leasing entered into a settlement agreement with International Metals and Pushye to settle its claims for $70,000.00. As part of the settlement agreement, International Metals and Pushye assigned their claims against

7

Valley Forge and Stein to Quality Leasing (Filing No. 222-1 at 4–10). Then following Quality Leasing's motion, the Court entered an Order substituting Quality Leasing as the real party in interest for the breach of contract claim asserted in International Metal's and Pushye's Third Party Complaint against Valley Forge and Stein (Filing No. 214). On May 20, 2020, Valley Forge and Stein filed their Motion for Summary Judgment against Motraghi, and Quality Leasing filed its Motions for Summary Judgment against Motraghi and Valley Forge.

## II.     SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to

relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

### III.     DISCUSSION

In the three pending Motions for Summary Judgment, the parties have asked for entry of judgment on many of the claims. The Court will address each of the Motions in turn.

#### A.     Valley Forge's and Stein's Motion against Motraghi (Filing No. 184)

In their Motion for Summary Judgment against Motraghi, Valley Forge and Stein ask the Court to enter judgment in their favor on all the claims and counterclaims asserted between them and Motraghi. Valley Forge and Stein have asserted the following eight claims against Motraghi: Count I breach of contract, Count II actual fraud and fraudulent misrepresentation, Count III tortious interference with a contract, Count IV breach of express warranty, Count V negligent misrepresentation, Count VI intentional interference with existing contractual/business relations, Count VII civil theft and conversion, and Count VIII contribution/indemnification (Filing No. 52 at 14–28). For his part, Motraghi has asserted the following ten counterclaims against Valley Forge and Stein: Count I deceit, Count II intentional breach of contract, Count III theft/larceny and conversion, Count IV conversion and deprivation of funds, Count V assault, Count VI defamation, Count VII interference with access to bank accounts, Count VIII wrongful infliction of extreme

9

hardship, Count IX interference with prospective economic advantage, and Count X fraudulent pleading (Filing No. 69 at 49–64).

Valley Forge and Stein assert that there are no disputes about the material facts and that they are entitled to judgment as a matter of law on all eighteen of these claims and counterclaims. In their ten-page summary judgment brief, Valley Forge and Stein explain the facts of this case, and then in just over one page, they present their "argument" with the section heading "Mazyar Motraghi's Counterclaim is Without Merit." (*See* Filing No. 185 at 8–9.) They repeat some of the facts, and then assert, "[Motraghi's] claims for mental harm, pain, stress and anguish are without merit." *Id.* at 9. Valley Forge and Stein then state,

> As stated in the American Law Institute, Restatement of the Law, Second, Contact [sic] Section 353, "Loss Due to Emotional Disturbance: Recovery for emotional disturbance will be excluded unless the breach also caused bodily harm or the contract or the breach is of such a kind that serious emotional disturbance was a particularly likely result.["]

*Id.*

Valley Forge and Stein do not present any legal analysis or argument, do not address any of the eighteen specific claims and counterclaims, do not cite to or discuss any case law, and do not discuss any of the legal elements of any of the claims and counterclaims. After Motraghi pointed out in his response brief various disputes concerning the material facts, Valley Forge and Stein filed their reply brief and restated a number of the facts, but they again failed to present any legal analysis or argument concerning the claims and counterclaims.

Courts "cannot make a party's arguments for him, or force him to make arguments he seems determined not to raise." *Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 523 (7th Cir. 2011) (internal citation omitted). The Seventh Circuit has explained,

> A party urging us to reverse a district court's judgment has an obligation to argue why we should reverse that judgment, and to cite appropriate authority to support that argument. The premise of our adversarial system is that appellate courts do not

> sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them. It is not this court's responsibility to research and construct the parties' arguments.

*United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) (internal citations and quotation marks omitted). This principle applies not only to the appellate courts but also to the district courts.

The Seventh Circuit has explained numerous times that "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived." *Clay v. Holy Cross Hosp.*, 253 F.3d 1000, 1002 n.1 (7th Cir. 2001). Additionally, "[i]f the moving party does not raise an issue in support of its motion for summary judgment, the nonmoving party is not required to present evidence on that point, and the district court should not rely on that ground in its decision." *Costello v. Grundon*, 651 F.3d 614, 629 (7th Cir. 2011) (internal citation and quotation marks omitted).

Because Valley Forge and Stein failed to present any legal analysis or argument regarding the eighteen claims and counterclaims and failed to provide supporting case law authority, their perfunctory Motion for Summary Judgment must be **denied**.

### B.      Quality Leasing's Motion against Valley Forge (Filing No. 192)

Quality Leasing moves for summary judgment against Valley Forge on Count III of its Amended Complaint (unjust enrichment) and Count I of its assigned claim from International Metals (breach of contract). "Quality [Leasing] seeks a judgment for the Purchase Price against [Valley Forge] on [these] two different causes of action." (Filing No. 196 at 3.)

#### 1.      Unjust Enrichment

Quality Leasing asserts that in order to prevail on its claim of unjust enrichment, it must establish that a measurable benefit has been conferred on Valley Forge under circumstances in which Valley Forge's retention of the benefit without payment would be unjust. *Wright v. Pennamped*, 657 N.E.2d 1223, 1229 (Ind. Ct. App. 1995). The claim "is a legal fiction invented

11

by the common-law courts in order to permit a recovery . . . where, in fact, there is no contract, but where the circumstances are such that under the law of natural and immutable justice there should be a recovery as though there had been a promise." *Clark v. Peoples Sav. & Loan Ass'n*, 46 N.E.2d 681, 682 (Ind. 1943).

Courts have articulated three elements for this claim: (1) a benefit conferred upon another at the express or implied request of this other party; (2) allowing the other party to retain the benefit without restitution would be unjust; and (3) the plaintiff expected payment. *Kelly v. Levandoski*, 825 N.E.2d 850, 861 (Ind. Ct. App. 2005).

Quality Leasing contends there is no dispute that Valley Forge received $239,500.00 from Quality Leasing for the purpose of paying for and purchasing the Equipment. Valley Forge did not deliver the Equipment and, thus, did not earn the funds it received. Valley Forge has retained the $239,500.00 and has not repaid anything to Quality Leasing. Quality Leasing argues, "There can be no reasonable doubt that receiving $239,500.00 is a 'measurable benefit' that has been conferred on the defendant VFE. Similarly, there can be no reasonable doubt that allowing VFE to retain the Purchase Price would be unjust." ([Filing No. 196 at 7](#).) Quality Leasing argues that there is no dispute of material fact, and the law is in its favor on the unjust enrichment claim.

In response, Valley Forge explains that it sent $100,000.00 of the funds that it had received from Quality Leasing to Motraghi for the purchase of the Equipment. Motraghi did not deliver the Equipment to Valley Forge, and Motraghi kept the $100,000.00. Valley Forge argues that Quality Leasing's claim for relief pursuant to the unjust enrichment claim is essentially the same claim that Quality Leasing brought against International Metals for breach of contract. And Quality Leasing settled that claim against International Metals for $70,000.00. Additionally, Valley Forge asserts, it has filed a Motion for Summary Judgment against Motraghi seeking return of the $100,000.00,

and Quality Leasing also has filed a Motion for Summary Judgment against Motraghi for the same $100,000.00.

Quality Leasing replies that it is inapposite to the unjust enrichment claim and breach of contract claim that Quality Leasing and Valley Forge are each pursuing multiple claims against multiple parties. Moreover, whether a judgment debtor might be entitled to a partial offset in satisfaction is not a reason to prevent entry of the judgment in the first instance. It is well recognized that "a plaintiff is only entitled to a single recovery for a single injury, regardless of how many defendants could be liable for that single injury, or how many different theories of recovery could apply to that single injury." *Portalatin v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 900 F.3d 377, 383 (7th Cir. 2018). Concerning the multiple claims brought by Quality Leasing and others in this case, that simply is not a basis for Valley Forge to object at this point. While there can be only one satisfaction, in the unlikely event that Quality Leasing acquires the ability to collect more than the total amount owed, the Court can then at that point decide who gets any excess.

The designated evidence reveals there are no disputes as to any of the material facts concerning the unjust enrichment claim. Quality Leasing wired $239,500.00 to Valley Forge, and Valley Forge received the $239,500.00 from Quality Leasing for the purpose of paying for and purchasing the Equipment for International Metals. Valley Forge did not deliver the Equipment to International Metals or to Quality Leasing. Valley Forge retained the $239,500.00, and it did not repay anything to Quality Leasing or International Metals. Valley Forge's receipt of $239,500.00 is a measurable benefit conferred upon it by Quality Leasing. Quality Leasing expected delivery of the Equipment or repayment of the funds; neither occurred. It would be unjust to withhold restitution from Quality Leasing.

That Valley Forge sent $100,000.00 to Motraghi for the purchase of the Equipment, Motraghi did not deliver the Equipment to Valley Forge, and Motraghi kept the $100,000.00 is not material to the unjust enrichment claim brought by Quality Leasing against Valley Forge. Those facts are relevant to the claims between Valley Forge and Motraghi. Furthermore, that Quality Leasing and International Metals settled their claims is not material to the unjust enrichment claim brought by Quality Leasing against Valley Forge. The Court concludes that Quality Leasing is entitled to summary judgment on its unjust enrichment claim against Valley Forge in the amount of $239,500.00.

### 2. **Breach of Contract**

Quality Leasing initially points out that International Metals assigned its breach of contract claim against Valley Forge to Quality Leasing as part of their settlement agreement, which has been confirmed by the Court at [Filing No. 214](). Quality Leasing notes that the Equipment is personal property and, thus, Article 2 of the Uniform Commercial Code applies to the contract to sell the Equipment. UCC Section 2-711 provides, "Where the seller fails to make delivery . . . the buyer may cancel, and whether or not he has done so may in addition to recovering so much of the price as has been paid . . . ." Ind. Code § 26-1-2-711.

Quality Leasing asserts that the breach of contract claim is a simple claim to recover the funds that were paid by Quality Leasing and for which International Metals was responsible. There is no dispute that, as the seller, Valley Forge entered into a contract to sell the Equipment to International Metals. Valley Forge admits that it received the funds for the purchase of the Equipment, and it did not deliver the Equipment to International Metals. Thus, the elements of a breach of contract claim are easily and indisputably met.

Valley Forge did not provide a separate response as to the breach of contract claim; instead, it relies on the same assertions of fact concerning the unjust enrichment claim as noted above in the previous section.

Quality Leasing replies that it settled its claim against International Metals for $70,000.00 *and* the assignment of International Metals' claims against Valley Forge. Quality Leasing's pleadings against Valley Forge seek $239,500.00, and that is the amount of the judgment sought. This is the exact amount that Valley Forge agrees that Quality Leasing wired to it for the purchase of the Equipment for International Metals pursuant to contract. The assigned claim of International Metals for breach of contract has no stated dollar amount, but Quality Leasing (which now owns the claim) is seeking $239,500.00 total.

The designated evidence supports entry of summary judgment on the breach of contract claim against Valley Forge. International Metals and Valley Forge entered into a contract whereby International Metals would pay Valley Forge $239,500.00, and Valley Forge would deliver to International Metals the Equipment. Quality Leasing paid Valley Forge $239,500.00 on behalf of International Metals. However, Valley Forge did not deliver the Equipment to International Metals, and it did not return the money it had been paid. Valley Forge breached its contract with International Metals, and that claim has been assigned to Quality Leasing. Quality Leasing is entitled to summary judgment on its breach of contract claim against Valley Forge in the amount of $239,500.00.[1]

### C.     **Quality Leasing's Motion against Motraghi (Filing No. 193)**

Quality Leasing moves for summary judgment against Motraghi on Count V of its

---

[1] The Court notes—and Quality Leasing has acknowledged—that "a plaintiff is only entitled to a single recovery for a single injury, regardless of how many . . . different theories of recovery could apply to that single injury." *Portalatin*, 900 F.3d at 383. Therefore, Quality Leasing can recover $239,500.00 from Valley Forge on its breach of contract claim or unjust enrichment claim, but it cannot recover $239,500.00 on the breach of contract claim and an additional $239,500.00 on the unjust enrichment claim.

Amended Complaint (unjust enrichment). Similar to its unjust enrichment argument against Valley Forge, Quality Leasing argues that the evidence shows a measurable benefit has been conferred on Motraghi under circumstances in which his retention of the benefit without payment would be unjust. *See Wright*, 657 N.E.2d at 1229. Quality Leasing wired $239,500.00 to Valley Forge for the purchase of the Equipment, and Valley Forge then wired $100,000.00 of those funds to Motraghi for the purchase of the Equipment. Quality Leasing argues that Motraghi was aware during the course of the transactions that the funds he had received came from Quality Leasing. Thus, Quality Leasing argues, Motraghi received $100,000.00 from Quality Leasing for the purchase of the Equipment. However, Motraghi never delivered the Equipment, and he kept the funds. Quality Leasing asserts that Motraghi kept the $100,000.00 and subsequently sold the Equipment to a third-party foreign buyer for $130,000.00, and because he did not deliver the Equipment to International Metals, it would be unjust to allow him to retain the $100,000.00.

In response, Motraghi takes issue with many of the statements of fact presented by Quality Leasing: he received the $100,000.00 from Valley Forge, not from Quality Leasing; he did not know the funds originated from Quality Leasing; Valley Forge refused to provide him with the contact information of Valley Forge's resale buyer or financing company; Quality Leasing did not know of Motraghi when it wired funds to Valley Forge; Motraghi conducted business with Valley Forge, not with Quality Leasing; and his contract to sell the Equipment was with Valley Forge, not International Metals.

The parties have many disputes concerning the facts as supported by the designated evidence, which preclude summary judgment. Additionally, Motraghi has presented evidence indicating that he did not know the funds originated from Quality Leasing and that he did not even know of the existence and identity of Quality Leasing, International Metals, and Pushye until February 2019 when he was drawn into this litigation (Filing No. 209-18 at 6; Filing No. 194-2 at

16

4–5). The evidence clearly shows that Valley Forge, not Quality Leasing, wire transferred $100,000.00 to Motraghi on January 3, 2018 (Filing No. 194-8 at 2). It appears from the evidence that any claim for unjust enrichment against Motraghi for $100,000.00 is for Valley Forge to pursue, not Quality Leasing. Quality Leasing's unjust enrichment claim is properly pursued against Valley Forge upon whom Quality Leasing conferred a measurable benefit, and which has been addressed in the previous section of this Order. Therefore, the Court **denies** Quality Leasing's Motion for Summary Judgment against Motraghi.

## IV.     CONCLUSION

For the foregoing reasons, the Court **DENIES** Valley Forge's and Stein's Motion for Summary Judgment against Motraghi (Filing No. 184) and **DENIES** Quality Leasing's Motion for Summary Judgment against Motraghi (Filing No. 193). The Court **GRANTS** Quality Leasing's Motion for Summary Judgment against Valley Forge (Filing No. 192) and enters judgment against Valley Forge in favor of Quality Leasing on its unjust enrichment and breach of contract claims for one award in the amount of $239,500.00. Because additional claims and counterclaims remain pending, final judgment will not issue at this time.

**SO ORDERED.**

Date: 12/11/2020

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Dennis A. Dressler
DRESSLER PETERS LLC
ddressler@dresslerpeters.com

Robert R. Tepper
DRESSLER PETERS LLC
rtepper@dresslerpeters.com

John T. Wagener
DRESSER PETERS LLC
jtwagener@dresslerpeters.com

Harold Abrahamson
ABRAHAMSON REED & BILSE
aralawfirm@aol.com

Steven D. Groth
BOSE MCKINNEY & EVANS, LLP
sgroth@boselaw.com

Service on the following *pro se* litigant will be made via first-class U.S. Mail with proper postage prepaid and will also be served via email:

Mazyar Motraghi
9950 Place de L'Acadie, Apt. 1673
Montreal, Quebec H4N 0C9
CANADA

Mazyar Motraghi
mazyarm@hotmail.com