UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| QUALITY LEASING CO., INC., | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| vs. | ) |
| | ) 1:18-cv-1969-TWP-MG |
| INTERNATIONAL METALS LLC, MANISH PUSHYE, MAZYAR MOTRAGHI, VALLEY FORGE EQUIPMENT, INC., and ROBERT STEIN, | ) |
| | ) |
| *Defendants*. | ) |
| MANISH PUSHYE and INTERNATIONAL METALS LLC, | ) |
| | ) |
| *Counter Claimants*, | ) |
| | ) |
| vs. | ) |
| | ) |
| QUALITY LEASING CO., INC., | ) |
| | ) |
| *Counter Defendant*. | ) |
| MANISH PUSHYE, INTERNATIONAL METALS LLC, and QUALITY LEASING CO., INC., | ) |
| | ) |
| *Third-Party Plaintiffs*, | ) |
| | ) |
| vs. | ) |
| | ) |
| VALLEY FORGE EQUIPMENT, INC. and ROBERT STEIN, | ) |
| | ) |
| *Third-Party Defendants*. | ) |
| VALLEY FORGE EQUIPMENT, INC., and ROBERT STEIN, | ) |
| | ) |
| *Third-Party Plaintiffs*, | ) |
| | ) |
| vs. | ) |



| | )|
|---|---|
| MAZYAR MOTRAGHI, | ) |
| | ) |
| *Third-Party Defendant.* | ) |
| | ) |
| MAZYAR MOTRAGHI, | ) |
| | ) |
| *Counter Claimant*, | ) |
| | ) |
| vs. | ) |
| | ) |
| VALLEY FORGE EQUIPMENT, INC. and ROBERT STEIN, | ) ) |
| | ) |
| *Counter Defendants.* | ) |
| | ) |

## **ORDER**

Pending before the Court is *pro se* Defendant/Counter Claimant Mayzar Motraghi's Motion for Leave to Amend his Counterclaim against Third-Party Plaintiffs/Counter Defendants Valley Forge Equipment, Inc. ("Valley Forge") and Robert Stein. [Filing No. 340.] This matter is now ripe for the Court's decision.

## I.
### BACKGROUND

**A.    Factual Background[1]**

This case concerns several claims arising out of the purchase by Plaintiff Quality Leasing Co., Inc. ("Quality Leasing") of an automobile logger baler that was located in San Juan, Puerto Rico (the "Equipment"). In short, Quality Leasing agreed to finance Defendant/Third-Party Plaintiff International Metals LLC's purchase of the Equipment from Valley Forge, which is owned and operated by Mr. Stein. [Filing No. 257 at 3-4.] Valley Forge, in turn, entered into a

---

[1] The following summary is from the Court's Entry on Motions for Summary Judgment. [Filing No. 257].

2

Confidential Equipment Seller's Agreement with Mr. Motraghi which called for Mr. Motraghi to sell the Equipment to Valley Forge for an agreed purchase price of $140,000. [Filing No. 257 at 4.] Under the terms of the agreement with Mr. Motraghi, Valley Forge was permitted to withhold $20,000 of the $140,000 for any necessary repairs to the Equipment, with any remaining funds from the withheld $20,000 to be sent to Mr. Motraghi. [Filing No. 257 at 4.] Mr. Motraghi delivered the Equipment to a port in Puerto Rico on January 3, 2018. [Filing No. 257 at 5.] After Mr. Motraghi delivered the Equipment, Valley Forge wired Mr. Motraghi $100,000 instead of the $120,000 (the $140,000 purchase price, less the $20,000 withhold) called for in the agreement, citing the condition of the Equipment. [Filing No. 257 at 5.] The next day, Mr. Motraghi retrieved the Equipment from the port because Valley Forge had refused to pay the full $120,000. [Filing No. 257 at 6.] On January 5, 2018, Mr. Motraghi informed Valley Forge that it was in breach, that he was cancelling the agreement, and that he was keeping the Equipment and the $100,000. [Filing No. 257 at 6.]

Mr. Stein filed a police report concerning the $100,000, and on January 12, 2018, Mr. Motraghi was contacted by a Pennsylvania police detective who told him that if he did not return the $100,000, it would be considered a crime. [Filing No. 257 at 6.] Mr. Motraghi attempted to wire $85,000 to Valley Forge the next day but was unable to do so because Mr. Motraghi's bank had placed a hold on his accounts pending a fraud investigation premised on representations made by Mr. Stein. [Filing No. 257 at 6.] After consulting counsel, Mr. Motraghi cancelled the $85,000 wire. [Filing No. 257 at 6-7.] In May 2018, the bank concluded its investigation in Mr. Motraghi's favor and removed the hold on his accounts. [Filing No. 257 at 7.]

**B.      Procedural Background**

In April 2018, Quality Leasing sued International Metals LLC and its owner Manish Pushye.[2] [Filing No. 1.] International Metals and Mr. Pushye filed a third-party complaint against Valley Forge and Mr. Stein. [Filing No. 31.] Valley Forge and Mr. Stein then filed a third-party complaint against Mr. Motraghi. [Filing No. 52.] Mr. Motraghi, proceeding *pro se*, responded by filing a Counterclaim against Valley Forge and Mr. Stein in April 2019. [Filing No. 69.]

Mr. Motraghi asserts the following ten claims in his original Counterclaim against Valley Forge and Mr. Stein:

- **Count 1: "Deceit"** – Mr. Motraghi alleges that Mr. Stein "knowingly, willfully and intentionally concealed his wrongful intention to reduce the payment amount after delivery of the Equipment …, made intentional misrepresentations to Motraghi and fraudulently induced Motraghi to deliver the Equipment." [Filing No. 69 at 51.] He further alleges that Mr. Stein and Valley Forge "obtained Motraghi's property under false pretenses" and that had Mr. Motraghi known of Mr. Stein and Valley Forge's true intentions, he would have "cancelled the contract … or would have sold the Equipment to someone else." [Filing No. 69 at 51.]

- **Count 2: "Intentional Breach of Contract"** – Mr. Motraghi alleges that Mr. Stein and Valley Forge breached the purchase agreement by paying Mr. Motraghi $20,000 less than the agreed-upon price. [Filing No. 69 at 52.]

- **Count 3: "Theft/Larceny and Conversion"** - Mr. Motraghi alleges that Mr. Stein and Valley Forge "obtain[ed] Motraghi's property under false pretenses" when Mr. Stein "instructed his agent to proceed with the export of the Equipment." [Filing No. 69 at 53.]

- **Count 4: "Conversion and Deprivation of Funds"** – Mr. Motraghi alleges that Mr. Stein and Valley Forge converted the additional $20,000 due to Mr. Motraghi under the agreement for their own use. [Filing No. 69 at 54.]

- **Count 5: "Assault"** – Mr. Motraghi alleges that Mr. Stein "threatened to cause Motraghi and his father to be imprisoned for twenty years on so-called 'wire

---

[2] Quality Leasing subsequently amended its complaint to add Mr. Motraghi, Valley Forge, and Mr. Stein as defendants. [Filing No. 117.]

fraud' charges," which caused Mr. Motraghi "great mental harm, pain distress and anguish." [Filing No. 69 at 55.]

- **Count 6: "Defamation"** – Mr. Motraghi alleges that Mr. Stein defamed him when Mr. Stein contacted the police and accused him of wrongdoing and when Mr. Stein contacted Mr. Motraghi's bank and made "misrepresentations and/or false statements by which he misled bank personnel into believing that the $100,000 wire transfer sent to Motraghi was 'unauthorized.'" [Filing No. 69 at 56.] Mr. Motraghi further alleges that these actions by Mr. Stein caused him "severe mental pain, distress and anguish." [Filing No. 69 at 56.]

- **Count 7: "Interference with Access to Bank Accounts"** – Mr. Motraghi alleges that Mr. Stein's statements to his bank caused Mr. Motraghi's bank accounts to be placed on hold from January 13, 2018 until May 7, 2018, and that in doing so, Mr. Stein breached a duty not to interfere with Mr. Motraghi's bank accounts. [Filing No. 69 at 57.]

- **Count 8: "Wrongful Infliction of Extreme Hardship"** – Mr. Motraghi alleges that as a result of his bank accounts being frozen as a result of Mr. Stein's actions, Mr. Motraghi "was suddenly plunged into extreme hardship, beginning while still in Puerto Rico and struggling to cope with the aftermath of Stein's tortious acts, during which Motraghi was unable to purchase the most basic necessaries of life including transportation, lodging or even food." [Filing No. 69 at 57.] Mr. Motraghi alleges that this was "harmful and injurious" to his "physical and mental health" and caused him "harm, injury, loss, distress and anguish." [Filing No. 69 at 58.]

- **Count 9: "Interference with Prospective Economic Advantage"** – Mr. Motraghi alleges that because his bank accounts were placed on hold, he was prevented from repairing the Equipment and then renting the Equipment to individuals in Puerto Rico, depriving him of potential business opportunities. [Filing No. 69 at 58-59.]

- **Count 10: "Fraudulent Pleading"** – Mr. Motraghi alleges that the third-party complaint filed against him in this lawsuit by Mr. Stein and Valley Forge "is a well-crafted deception and abuse of process in that it intentionally makes numerous baseless allegations" and attaches a "fraudulent letter" that Mr. Stein purported to send Mr. Motraghi, but Mr. Motraghi contends was never sent. [Filing No. 69 at 59-60.]

In June 2019, the Court entered an Amended Case Management Plan Order that set a deadline of July 30, 2019 for parties to amend their pleadings. [Filing No. 86 at 2.] This deadline was subsequently extended to October 1, 2019. [Filing No. 110.]

A trial date of June 29, 2021 is set for this matter. [Filing No. 344.] In connection with the upcoming jury trial, on February 11, 2021, the Court issued a ruling on a Motion in Limine filed by Mr. Stein and Valley Forge in which they asked the Court to preliminarily exclude from trial "[a]ny claim by Mazyar Motraghi for mental harm, pain, stress, anguish or similar matters, etc." [Filing No. 315 at 3.] The Court found that while some of Mr. Motraghi's claims make "reference to suffering mental distress, pain, and anguish," he did not "plead any independent claims for intentional or negligent infliction of emotional distress." [Filing No. 315 at 5.] Therefore, the Court concluded that Mr. Motraghi "will not be permitted to pursue during the jury trial any emotional distress claims or damages as an independent claim because such claim was not included in the pleadings." [Filing No. 315 at 5.] However, with regard to the presentation of evidence during trial, the Court found that under applicable case law, Mr. Motraghi "may present evidence concerning his suffering[,] mental distress, pain, and anguish as it relates to his asserted claims because Valley Forge and Stein have not met the high standard for a motion in *limine* of showing the evidence clearly is not admissible for any purpose." [Filing No. 315 at 5.]

On the heels of the Court's ruling, on March 26, 2021, Mr. Motraghi filed the instant Motion for Leave to Amend Counterclaim. [Filing No. 340.] He asks to add the following claims against Valley Forge and Mr. Stein: intentional infliction of emotional distress ("IIED"), negligent infliction of emotional distress ("NIED"), and gross negligence. [Filing No. 340 at 2-7.]

## II.
### LEGAL STANDARDS

Courts should "freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), but leave to amend is not granted automatically. *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC,* 499 F.3d 663, 666 (7th Cir. 2007). "District courts have broad discretion to deny leave to amend where there is undue delay, … undue prejudice to the defendants, or where

6

the amendment would be futile." *Divane v. Northwestern Univ.*, 953 F.3d 980, 993 (7th Cir. 2020) (quoting *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008)).

Furthermore, "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citations and quotation marks omitted). The liberal construction afforded *pro se* filings "relates to both the *pro se* plaintiff's factual allegations and their legal theories." *White v. City of Chicago*, 2016 WL 4270152, at *13 (N.D. Ill. Aug. 15, 2016).

### III.
#### DISCUSSION

Mr. Motraghi asks that the Court permit him to add claims for IIED, NIED, and gross negligence. [Filing No. 340 at 2-7.]

Mr. Motraghi's proposed IIED claim alleges that Mr. Stein intentionally caused distress to Mr. Motraghi when Mr. Stein "sen[t] e-mails and numerous mobile phone text messages to Motraghi in which Stein threatened to contact law enforcement and accuse Motraghi and Motraghi's father of criminal activity if Motraghi did not send $100,000" to Mr. Stein and Valley Forge; "refused Motraghi's proposal to take the controversy to a court of law"; "threatened Motraghi and Motraghi's father with 20 years in prison"; "threatened Motraghi with the death of Motraghi's father in prison"; "made accusations of criminality against Motraghi" to Pennsylvania police; and contacted Mr. Motraghi's bank and accused him of fraud, causing a hold to be placed on Mr. Motraghi's accounts. [Filing No. 340 at 3-4.] Mr. Motraghi alleges that these actions by Mr. Stein caused him "severe and prolonged emotional distress, mental harm, anguish, pain and grief." [Filing No. 340 at 5.] Mr. Motraghi's proposed NIED claim contains similar allegations. [Filing No. 340 at 5-6.]

As to his proposed gross negligence claim, Mr. Motraghi alleges that Valley Forge and Mr. Stein "obtain[ed] possession of the Equipment under false pretenses"; that Mr. Motraghi "relied" on Valley Forge and Mr. Stein's representations that Mr. Motraghi "would be paid for the Equipment in accordance with the contract"; and that these false representations caused Mr. Motraghi to suffer financial loss and emotional harms. [Filing No. 340 at 6-7.]

In support of his request to add these new claims, Mr. Motraghi contends that "[i]t would be unfair and unjust" to deny Mr. Motraghi the opportunity to pursue these additional claims in view of the egregious behavior of Valley Forge and Mr. Stein. [Filing No. 340 at 8.] He further contends that the addition of these claims will not impact the scheduled trial date and "will not result in undue burden or prejudice to the other parties." [Filing No. 340 at 8.]

Valley Forge and Mr. Stein respond that it is too late in the litigation for Mr. Motraghi to add additional claims, noting that the trial is scheduled for June and that Mr. Motraghi's deposition was completed a year ago. [Filing No. 342 at 2.] They further argue that Mr. Motraghi failed to explain why the proposed additional claims were not included in his original in April 2019. [Filing No. 342 at 2.]

In reply, Mr. Motraghi argues that he included allegations in his original Counterclaim about emotional distress and gross negligence, but, because he is proceeding *pro se*, he "was not aware of the [C]ourt's requirement that such claims need to be made in their own independent counts." [Filing No. 343 at 3.] He further argues that the additional claims will not delay the trial or prejudice Mr. Stein and Valley Forge because the proposed claims "present no new facts, require no additional period of discovery and involve no changes to either Motraghi's witness or exhibit list." [Filing No. 343 at 3.] He also notes that during his deposition, counsel for Mr. Stein and Valley Forge questioned him about his emotional distress, [Filing No. 343 at 3], and that Mr. Stein

8

and Valley Forge "made no discovery request to [him] at all when [they] had the opportunity to do so," [Filing No. 343 at 4].  Mr. Motraghi also asserts that if he is not permitted to amend his Counterclaim, he will "have no choice but to pursue his additional claims in a separate lawsuit," and therefore, the "interests of justice and judicial economy" will be served by granting him leave to amend his Counterclaim.  [Filing No. 343 at 5.]

"Motions for leave to amend are generally denied based on undue delay when they are filed long after the filing of the original pleading and after extensive litigation." *East v. Dimon*, 2021 WL 929668, at *1 (N.D. Ind. Mar. 11, 2021) (citing *Hoenig v. Karl Knauz Motors, Inc.*, 983 F. Supp. 2d 952, 959-60 (N.D. Ill. 2013)).  While delay alone rarely provides sufficient reason to deny a motion for leave to amend, "the longer the delay, the greater the presumption against granting leave to amend." *Tamari v. Bache & Co. S.A.L.,* 838 F.2d 904, 909 (7th Cir. 1988).  That is so because "the longer the delay in seeking leave to amend, the likelier is it both that the delay is inexcusable … and that granting leave to amend will, by further delaying the lawsuit, impair the public interest in the prompt resolution of legal disputes." *Id.* (denying motion to amend complaint six weeks before scheduled trial).  Undue prejudice from a delay "occurs when the amendment brings entirely new and separate claims, adds new parties, or at least entails more than an alternative claim or a change in the allegations of the complaint and when the additional discovery is expensive and time-consuming." *In re Ameritech Corp.*, 188 F.R.D. 280, 283 (N.D. Ill. 2015) (internal citation and quotation marks omitted).

Furthermore, when a party seeks leave to amend after the deadline for amendments to the pleadings has expired, the party must show "good cause." Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause."); *see also Arrigo v. Link*, 836 F.3d 787, 797 (7th Cir. 2016) ("To amend a pleading after the expiration of the trial court's scheduling order deadline to amend

9

pleadings, the moving party must show 'good cause.'") (internal citation and quotation marks omitted).  Courts may "apply the heightened good-cause standard of Rule 16(b)(4) before considering whether the requirements of Rule 15(a)(2) [are] satisfied." *Bell v. Taylor*, 827 F.3d 699, 706 (7th Cir. 2016) (internal citation and quotation marks omitted).

Because the deadline for the parties to amend their pleadings was October 1, 2019, [Filing No. 110], Mr. Motraghi must first show "good cause" for the belated proposed amendment. *See* Fed. R. Civ. P. 16(b)(4). "Rule 16's 'good cause' standard focuses primarily on the moving party's diligence in seeking leave to amend or supplement its complaint." *R3 Composites Corp. v. G&S Sales Corp.*, 2021 WL 613836, at *3 (N.D. Ind. Feb. 17, 2021).

The "good cause" offered by Mr. Motraghi is that he did not understand how to specifically plead the additional claims because he is proceeding *pro se* in this case.  [Filing No. 343 at 3 (contending that he "did not make separate claims for emotional distress and gross negligence in his original counterclaim because, having no legal training, he was not aware of the court's requirement that such claims need to be made in their own independent counts").]  Although *pro se* parties are subject to less stringent pleading standards, "[i]t also is well established that *pro se* litigants are not excused from compliance with procedural rules." *Loubser v. United States*, 606 F. Supp. 2d 897, 909 (N.D. Ind. 2009).  And, the Supreme Court has made clear that it has "never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel." *McNeil v. United States*, 508 U.S. 106, 113 (1993).  Thus, Mr. Motraghi's status as a *pro se* party, standing alone, does not provide good cause for failing to adhere to deadlines under Fed. R. Civ. P. 16(b)(4).

Furthermore, under Fed. R. Civ. P. 15(a), Mr. Motraghi has not established that the Motion for Leave to Amend, which he filed two years after his original Counterclaim, three months before

10

the scheduled trial, and well after the close of discovery and the deadline for filing dispositive motions, does not constitute undue delay.  Notably, Mr. Motraghi's proposed new claims do not contain new facts; he simply seeks to advance new legal theories.  In other words, the delay is not attributable to any new developments or premised on any facts previously beyond Mr. Motraghi's knowledge.  Instead, Mr. Motraghi is attempting to add new legal arguments based on facts that were known to Mr. Motraghi at the time he filed his original Counterclaim.  Just as his *pro se* status does not provide good cause under Fed. R. Civ. P. 16(b)(4), it also does not provide an excuse for the delay, rendering the delay "undue" under Fed. R. Civ. P. 15(a).  *See Tamari*, 838 F.2d at 909.  *See also Karma Int'l, LLC v. Indianapolis Motor Speedway, LLC*, 2017 WL 11002072, at *3 (S.D. Ind. Aug. 14, 2017) ("If the same set of facts set forth in the original complaint support the proposed new claims, there is no good reason why [plaintiff] could not have asserted those claims in a timely fashion.  [Plaintiff] could have alleged the proposed new claims at the beginning of this lawsuit.").  Furthermore, adding the additional proposed claims so close to the scheduled trial date in this three-year-old case would "impair the public interest in prompt resolution of legal disputes."  *See Tamari*, 838 F.2d at 909.[3]

Therefore, the Court **DENIES** Mr. Motraghi's Motion for Leave to Amend because Mr. Motraghi has not established good cause for not adhering to the case schedule, the delay in adding these claims is inexcusable, and the delay would prejudice the timely administration of justice.

---

[3] The Court observes that many of the allegations in Mr. Motraghi's proposed gross negligence claim sound in fraud similar to that asserted in Mr. Motraghi's "Deceit" claim. [*Compare* Filing No. 69 at 51 (Counterclaim) with Filing No. 340 at 6-7 (Proposed Amended Counterclaim).]  Thus, the substance of Mr. Motraghi's proposed gross negligence claim is already part of this case.

IV.
CONCLUSION

Based on the foregoing, Mr. Motraghi's Motion for Leave to Amend Counterclaim, [340], is **DENIED**.

Dated: 4/19/2021

Mario Garcia
United States Magistrate Judge
Southern District of Indiana

**Distribution via ECF to all counsel of record**

**Distribution via U.S. Mail and Electronic Mail to**

Mr. Mazyar Motraghi
9550 Place de L'Acadie, Apt. 1673
Montreal, Quebec H4N 069
CANADA
mazyarm@hotmail.com